IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| WILLIAM H. GILLIAM, | ) | CIVIL NO. 18-00317 SOM/RLP |
|---|---|---|
| Plaintiff, | ) | ORDER DENYING MOTION SEEKING |
| | ) | LEAVE TO FILE A SECOND |
| vs. | ) | AMENDED COMPLAINT |
| ROY GLASSETT, | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION SEEKING LEAVE
TO FILE A SECOND AMENDED COMPLAINT**

**I.      INTRODUCTION.**

Plaintiff William H. Gilliam has a dispute with the Association of Apartment Owners of the Kuhio Shores at Poipu ("AOAO"). In 2016, the AOAO filed a foreclosure action against the owner of Unit 209, Pacific Rim Property Service Corporation. *See* http://hoohiki.courts.hawaii.gov (input case ID "5CC161000063"). While it is not clear whether Gilliam has an ownership interest in Pacific Rim Property Service Corporation, according to the Department of Commerce & Consumer Affairs of the State of Hawaii, Business Registration Division, Gilliam is the President and a Director of it. *See* https://hbe.ehawaii.gov/documents/business.html?fileNumber=241082D1&view=officers. The company uses the same address as Gilliam. https://hbe.ehawaii.gov/documents/business.html?fileNumber=241082D1&view=info.

Gilliam complains that the AOAO has been applying monthly payments to fines and attorneys' fees, rather than to maintenance fees. *See* Proposed Second Amended Complaint ¶ 11. Gilliam now sues Defendant Roy Glassett, who simply vacationed at a unit in the Kuhio Shores at Poipu. Essentially, Gilliam seeks damages from Glassett for the AOAO's actions. Gilliam's claims against Glassett appear to be asserted not in good faith, but rather to harass him or to gain leverage against the AOAO with respect to a state-court foreclosure action in which Glassett is not a party.

As described in the First Amended Complaint in this action, in March 2013, Glassett stayed in Unit 109 of the Kuhio Shores at Poipu while vacationing on Kauai. Glassett allegedly disturbed Gilliam, who is related to a company that owned Unit 209, by playing music a few minutes after "quiet time" began. Gilliam called security, which determined that the music's volume was acceptable. The following day, Gilliam supposedly threw water on Glassett when Glassett was sitting outside of his unit listening to music. On or about March 13, 2013, Glassett sent an email to management of the Kuhio Shores at Poipu. This email purported to describe Glassett's interaction with Gilliam.

While the proposed Second Amended Complaint asserts a civil Racketeer Influenced and Corrupt Organization ("RICO") claim, as well as state law claims of tortious interference and

defamation, the court denies Gilliam's motion for leave to file the proposed Second Amended Complaint because it would be futile to allow him to proceed. The Second Amended Complaint does not assert any claim over which this court would have subject matter jurisdiction.

**II.     ANALYSIS.**

Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to allow amendment of a complaint, courts consider factors such as: whether the amendment will cause undue delay; whether the movant has demonstrated bad faith or a dilatory motive; whether the amendment will unduly prejudice the opposing party; whether amendment is futile; and whether the movant has repeatedly failed to cure deficiencies. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). While this court freely gives leave to amend a complaint "when justice so requires," this court may deny a motion to amend a complaint when a proposed complaint would be futile. See *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution or by statute. *See Exxon Mobil Corp. v. Allapattah*

*Servs.*, 545 U.S. 546, 552 (2005).  Gilliam, the party invoking this court's jurisdiction, has the burden of proving the actual existence of subject matter jurisdiction.  *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction.").  Gilliam's proposed Second Amended Complaint asserts diversity and federal question jurisdiction.  Neither supplies this court with subject matter jurisdiction, making the proposed Second Amended Complaint futile, as it would be subject to dismissal.

**A. THE PROPOSED SECOND AMENDED COMPLAINT DOES NOT SATISFY THE JURISDICTIONAL PREREQUISITE FOR DIVERSITY JURISDICTION.**

Under 28 U.S.C. § 1332(a), this court has original jurisdiction with respect to civil actions when the parties are diverse and the matter in controversy exceeds $75,000, exclusive of interest and costs.  When a complaint is originally filed in federal court, "the amount in controversy is determined from the face of the pleadings."  *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (quotation marks and citation omitted).  Generally, the amount in controversy alleged in a complaint controls so long as it is made in good faith.  However, a court may dismiss a complaint for lack of diversity jurisdiction when it appears "to a legal certainty that the claim is really for less than the jurisdictional

4

amount." *Id.* That is, "a federal court has subject matter jurisdiction unless upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." *Id.* (quotation marks and citation omitted). *Accord Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (quotation marks and citation omitted)).

While the proposed Second Amended Complaint alleges that the necessary amount in controversy is in issue, this court rules that "it is obvious that the suit cannot involve the necessary amount." *Geographic Expeditions*, 599 F.3d at 1106. To a legal certainty, Gilliam has not pled a claim against Gilliam involving more than $75,000 in controversy, exclusive of interest and costs.

Gilliam alleges that Glassett played music too loudly while staying at a vacation unit one floor below the unit Gilliam was in. *See* Proposed Second Amended Complaint ¶ 12, ECF No. 22-1, PageID # 166. According to an email dated March 14, 2013, written by Glassett and attached to the proposed Second Amended Complaint, Glassett and someone named Marjie were

> sitting on the patio listening to music and visiting. At approximately 9:15pm [on March 10, 2013,] the tenant from #209 [Gilliam]

5

> came around the corner in the dark and began
> yelling and screaming that our music was too
> loud and that quiet hours began at 9pm. He
> was very angry, abusive and came upon us very
> suddenly. It was very unsettling and
> somewhat threatening in the way he approached
> us.
>
> The next morning he was on the patio above
> us. I tried to speak to him and explain our
> willingness to play our music so it did not
> disturb him, but he would not let me speak
> and again began yelling and then went inside.
> He would not give us an opportunity to speak
> and as he was leaving the patio I did let him
> know quiet hours begin at 10pm, not 9pm as he
> had told me.
>
> Last night, Wednesday, we were again on the
> patio listening to music playing inside the
> condo. At around 9pm, Robert the night guard
> approached us to let us know that the tenant
> in #209 lodged a complaint that our music was
> too loud. Robert [assessed] the situation
> and said we were not being too loud and that
> the music could not be heard beyond the patio
> as the ocean was too loud. Our music was at
> a volume that would be lower than [] a normal
> TV volume. Robert also evaluated the noise
> from unit #209 and said he could not hear our
> music from that vantage point. He returned
> later to confirm our behavior was well within
> good tenant behavior. He also suggested that
> if the threatening behavior continued, we
> should call the police.
>
> Shortly after that, water came splashing down
> onto our patio from the patio of #209 and the
> sliding door slammed shut.

ECF No. 22-1, PageID # 171.

Even taking as true Gilliam's factual allegations about what happened and assuming that Glassett lied in his email, the facts alleged do not support an award exceeding $75,000. Rather

6

than describing how Glassett harmed him, Gilliam focuses his proposed Second Amended Complaint on how the AOAO wronged him. For example, he says that some of the owners of units in the Kuhio Shores at Poipu and the employees, agents, servants, and attorneys of its AOAO formed a "racketeering enterprise." Proposed Second Amended Complaint ¶ 8, ECF No. 22-1, PageID # 165. He says that this "enterprise diverts AOAO resources to its own and its participants['] use." *Id.* ¶ 10. Gilliam alleges that the AOAO applied money it received from him to various charges, fines, and attorneys' fees, before applying that money to regular assessments, including maintenance fees. *Id.* ¶ 11, PageID #s 165-66. In other words, Gilliam complains that, although the monthly maintenance fee bill was being paid to the AOAO, the AOAO was not applying that money to the maintenance fees owed, applying that money instead to other charges.

Gilliam alleges that, after conferring with the "enterprise participants, Glassett maliciously prepared, composed and then transmitted" his email of March 14, 2013. *Id.* ¶ 13, PageID # 167. Gilliam then appears to say that, because of the email, the AOAO fined him and charged him attorneys' fees and other costs. *Id.* ¶ 14. Ultimately, the AOAO placed a lien on Gilliam's property and is judicially foreclosing on it. *Id.* ¶ 17. Gilliam says he incurred more than $100,000 in defending against the foreclosure action, which the AOAO appears to have

initiated because of money Gilliam supposedly owed the AOAO.  *Id.* ¶ 19.  Gilliam does not say how much money he was fined for the conduct relating to Glassett's music.  He instead appears to be seeking to hold Glassett responsible for all of the money the AOAO has assessed.  The AOAO is not a Defendant in this action.

Given these facts, this court rules that, to a legal certainty, Gilliam does not allege claims against Glassett exceeding $75,000.  The proposed Second Amended Complaint does not establish why Glassett is responsible for all of the AOAO's conduct.  There is not even an allegation that Glassett knew about the AOAO's charges.  At most, Gilliam alleges that Glassett spoke to members of the AOAO's board or to other AOAO agents.  But nothing in the proposed Second Amended Complaint suggests that Glassett participated in any AOAO decision.  The court therefore rules that the First Amended Complaint fails to allege facts demonstrating diversity jurisdiction.

**B. THE PROPOSED SECOND AMENDED COMPLAINT DOES NOT SATISFY THE JURISDICTIONAL PREREQUISITE FOR FEDERAL QUESTION JURISDICTION.**

"A plaintiff properly invokes § 1331 jurisdiction when [he or] she pleads a colorable claim arising under the Constitution or laws of the United States."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (quotation marks and citation omitted).  "Any non-frivolous assertion of a federal claim

8

suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits under Rule 12(b)(6)." *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 951 (9th Cir. 1999).

Gilliam asserts a wholly insubstantial and frivolous civil RICO claim. *See Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ("a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous"); *Leeson v. Transamerica Disability Income* Plan, 671 F.3d 969, 975 (9th Cir. 2012) (same).

While a civil RICO claim is provided for by 18 U.S.C. § 1964(c), the claim alleged by Gilliam is not a "non-frivolous assertion of a federal claim." That statute allows any person who suffers injury to a business or property because of a violation of § 1962 to sue in an appropriate district court. In relevant part, § 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate commerce, to conduct, or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In addition to alleging an effect on interstate commerce, § 1962(c) requires Gilliam to allege "(1) the conduct (2) of an enterprise

9

(3) through a pattern (4) of racketeering activity." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (quotation marks and citation omitted).

Gilliam alleges that the "racketeering enterprise" consisted of some of the owners of units in the Kuhio Shores at Poipu and the employees, agents, servants, and attorneys of its AOAO. Proposed Second Amended Complaint ¶ 8, ECF No. 22-1, PageID # 165. Notably, Gilliam does not allege that Glassett was part of the enterprise. *See id.* At most, Glassett sent a single email to the AOAO that described events during his vacation at the Kuhio Shores at Poipu. "The enterprise and its participants then based and caused money charges, including attorneys fees, fines, costs and accruing as outlined in the scheme in paragraph eleven" on the email. *See* Proposed Second Amended Complaint ¶ 14, PageID # 167. That Glassett is not even part of the enterprise demonstrates the futility of any proposed substantive civil RICO claim. But that proposed RICO claim fails for other reasons.

"[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986).

"Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as including any act "indictable" under certain enumerated federal criminal statutes, including wire fraud in violation of 18 U.S.C. § 1343.[1] Gilliam alleges that Glassett committed wire fraud when he sent the email of March 14, 2013. Gilliam asserts no facts suggesting that Glassett intended to defraud anyone or to obtain money or property by false or fraudulent pretense. Gilliam, morever, does not allege at least two acts of wire fraud, as required by section 1961(5) in order to establish a "pattern." At best, paragraph 11 of the Proposed Second Amended Complaint vaguely describes a "scheme" in which the enterprise allegedly diverted money away from maintenance charges to other fees. But Gilliam does not detail that "scheme," much less Glassett's role in it. Nor does Gilliam allege sufficient facts for this court to infer wire fraud in violation of 18 U.S.C. § 1343.

While § 1962(d) makes it unlawful to conspire to commit a violation of § 1962(c), Gilliam's conclusory allegation that

---

[1]The wire fraud statute, 18 U.S.C. § 1343, states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

Glassett conspired with the enterprise to violate § 1962(c) is insufficient. With respect to a conspiracy to commit a substantive RICO violation, Gilliam need not prove that Glassett committed two or more predicate acts. "[I]t is sufficient that he knew about and agreed to facilitate the scheme." *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008) (quotation marks and citation omitted). But "[a]llegations of a conspiracy must be sufficiently detailed to enable defendants to identify the conspiracy of which they are alleged to be a part." *Marshall v. City of Atlanta*, 195 B.R. 156, 170 (N.D. Ga. 1996).

Gilliam alleges that, solely by sending the email, Glassett "conspired to cause the entry of . . . money charges and thereby participate in the enterprise's affairs." However, he alleges no facts that plausibly allege Glassett's agreement to take money from Gilliam. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (quotation marks and citation omitted)); Proposed Second Amended Complaint ¶ 15 ("Defendant as evidenced by Exhibit E [which is a copy of the email,] conspired to cause the entry of such money charges and thereby participate in the enterprise's affairs."). At best, Glassett's email was sent to people related to the AOAO, describing Glassett's version of what occurred between Glassett and Gilliam. Even if the AOAO fined Gilliam

because of what was said in the email by a vacationing guest at the Kuhio Shores at Poipu, sufficient facts are not alleged establishing any illicit agreement between Glassett and the AOAO to have the AOAO fine Gilliam and apply his maintenance fee payments toward the fine, rather than towards Gilliam's monthly fees. In other words, Glassett's email, by itself, is insufficient to establish a conspiracy between Glassett and the AOAO to commit mail or wire fraud by taking Gilliam's monthly fees.

Gilliam is attempting to hold Glassett liable for the AOAO's conduct without sufficiently alleging why a vacationer should be liable for the AOAO's alleged acts. This court rules that the proposed claim cannot support federal question jurisdiction and is instead being asserted solely for the purpose of establishing jurisdiction for state-law claims through a frivolous RICO claim. *See Bell*, 327 U.S. at 682-83. Because Gilliam does not propose nonfrivolous federal claims, the federal claims he seeks to assert do not supply this court with subject matter jurisdiction.

**III.    CONCLUSION.**

Gilliam's proposed Second Amended Complaint demonstrates neither diversity nor federal question jurisdiction. It therefore contains no claim over which this court has subject matter jurisdiction. Accordingly, the court denies Gilliam's

motion for leave to file the proposed Second Amended Complaint because it would be futile to allow him to do so.

The court normally and liberally gives *pro se* plaintiffs such as Gilliam leave to file amended complaints to address pleading deficiencies. However, under the circumstances presented here, Gilliam has demonstrated through multiple complaints that he lacks viable claims over which this court has subject matter jurisdiction. Instead, Gilliam appears intent on either pursuing Glassett for having complained about Gilliam while Glassett was vacationing on Kauai, or using the proposed Second Amended Complaint as leverage in a foreclosure action in which Glassett is not a party.

Because it is "absolutely clear" that the lack of subject matter jurisdiction cannot be cured by an amended pleading, this court denies leave to file the proposed Second Amended Complaint or any other amended pleading.

The court further orders the Clerk of Court to enter judgment in favor of Glassett and against Gilliam and to close this case. *See Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to

amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (quotation marks and citation omitted)).

        IT IS SO ORDERED

        DATED: Honolulu, Hawaii, February 6, 2019.



        /s/ Susan Oki Mollway
        Susan Oki Mollway
        Chief United States District Judge

*Gilliam v. Gassett*, Civil No. 18-00317 SOM-RLP; ORDER DENYING MOTION SEEKING LEAVE TO FILE A SECOND AMENDED COMPLAINT